UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT L. CURRAN,

                                 Plaintiff,

                                                                    **Hon. Hugh B. Scott**

                                v.                                                **13CV721A**

                                                                      **Report
and
Recommendation**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security[1],

                                 Defendant.

Before the Court is plaintiff's motion for judgment on the pleadings (Docket No. 12).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Robert Curran" or "plaintiff") filed an application for disability insurance benefits on November 2, 2010. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated December 17, 2012, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final

---

[1]On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the now former Commissioner Michael Astrue as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

decision of the Commissioner on June 11, 2013, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on August 8, 2013 (Docket No. 1). Plaintiff moved for judgment on the pleadings (Docket No. 12), to which defendant responded (Docket No. 13) without filing her own motion. Plaintiff duly replied (Docket No. 14) and the motion was deemed submitted without oral argument on March 18, 2014.

## FACTUAL BACKGROUND[2]

Plaintiff was born on July 20, 1973, has his GED (R. 516, 17), and worked as a drywall hanger and laborer. He claims disabilities of degenerative disc changes in his lower back, bipolar disorder, and ADHD (R. 13). He lives with his fiancé and three young children, he has one close friend, and he chats with a brother occasionally (R. 15). He tries to do household chores (wash dishes and laundry, vacuums, wakes children and prepares their meals) (R. 15). He let his driver's license expire so he walks (to avoid crowds on public transportation) (R. 15).

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff originally claimed an onset date of December 31, 2009, but amended his claim to the latter onset date, November 2, 2010, the date he ceased substantial gainful activity (R. 13). Plaintiff was released from jail in June 2010 and had not sought medical treatment until November 2010. He left past jobs after getting shorted on his pay and not getting along with supervisors and coworkers. (R. 15.) He testified about suicidal thoughts he had (and suicide attempts while in prison from 1996 to 2001), crying spells, and alleges sleep difficulty and resultant fatigue (R. 15). He complains that dust and humidity bother his breathing and his back bothered him daily (R. 15).

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings.

He has mild sleep apnea but plaintiff has not sought treatment for this condition (R. 15). He uses a back brace, takes Ibuprofen for his pain, and Adderall for ADHD which helps him focus (R. 15).

In 2010, plaintiff complained of back pain while at work. X-rays revealed mild degenerative changes. In June 2010, plaintiff sought treatment for his lower back and was found to have full range of motion, he was intact neurologically, and walked with a normal gait (R. 15, 509-15). In December 2010, he complained of back pain with numbness in his legs from shoveling snow (R. 15, 471-89). Plaintiff sought treatment for his back in February 2011, was prescribed pain medication that he did not want to take and then was referred to pain management for other options such as physical therapy but he did not pursue these options (R. 15, 490-506).

Plaintiff was seen at Lakeshore Behavioral Health in November 2010 and monthly until January 2011 for depression, he resumed treatment in December 2011 (R. 16, 582-605). He was diagnosed for ADHD and bipolar disorder (R. 16, 603). By March 2012 he was prescribed Adderall which helped with concentration (R. 16, 607-10). In examinations on April and June 2012, plaintiff continued to be doing well, was satisfied with his medication, and had more energy and focus (R. 16-17, 609, 610).

Plaintiff had a consultative psychiatric evaluation in June 2011 where he reported last working as a drywall hanger in February 2011 (R. 16, 516-20). Sandra Jensen, Ph.D., conducted this evaluation and found that plaintiff was being treated for bipolar disorder/mood swings minimally managed by Lamictal (R. 16). Dr. Jensen found that plaintiff could perform all activities of daily life (R. 16, 518). Dr. Jensen concluded that plaintiff's ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress might be mildly to moderately impaired due to his bipolar disorder symptoms (R. 16, 519).

The ALJ found that plaintiff's mental impairments did not meet or exceed Listing 12.04, since he did not have at least two marked limitations of the "Paragraph B" criteria for disability (R. 13-14). Plaintiff also was found not to have met "Paragraph C" criteria (R. 14).

A consultative physical examination by Dr. Nikita Dave in June 2011 revealed that plaintiff injured his back while working in a lumber yard in his 20s, but plaintiff continued to work at heavy labor after several more injuries (R. 16, 521-31). The examination revealed some range of motion difficulties with the lumbar spine but his straight leg raising was negative. The examiner found that plaintiff had moderate to severe limitations for prolonged standing, walking, repetitive bending, twisting, lifting, carrying, pushing, and pulling for greater than lightly to moderately weighted objects (R. 16). Regarding COPD, plaintiff was advised to avoid dust, fumes, inhalants, and chemicals (although he continues to smoke) (R. 16, 521-31). The ALJ rejected these findings as not being supported by the medical file and were based upon a single examination (R. 16). The state agency medical consultants, however, found that plaintiff could perform simple jobs in a low contact setting (R. 16).

The ALJ found that, while plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements about their intensity, persistence and limiting effects were not credible as they were not consistent with his residual functional capacity (R. 17). While plaintiff may experience some degree of pain and discomfort, the ALJ found that "mild to moderate pain or discomfort is not, in itself, incompatible with the performance of sustained work activity" (R. 17). The ALJ found that the medical and psychological record and plaintiff's testimony would not preclude him from performing at his residual functional capacity described below (R. 17).

The ALJ found that plaintiff had a residual functional capacity ("RFC") to perform light work with limitations. Those limitations consisted of occasionally performing postural activities; no climbing of ropes, ladders, or scaffolds; occasional carrying, pushing, and pulling; avoidance of respiratory irritants and humidity. The ALJ found in this RFC that plaintiff was able to understand, remember, and carry out simple instructions and perform simple tasks and he could occasionally make simple decisions. Plaintiff was to have no or limited proximity to co-workers with superficial (up to 5% of his time) interaction with coworkers; he was to have only occasional interaction with supervisors; and no interaction with the general public. This RFC found that plaintiff was restricted to only occasional changes in the work place setting. (R. 14.) The ALJ then concluded that plaintiff could not return to his past relevant work as a drywall hanger and laborer (R. 17).

The ALJ rejected the assessment of Dr. Patrick Hurley, who found in October 2012 that plaintiff could not engage in full time competitive work on a sustained basis but would not provide any work limitations since he had "no means to evaluate work activity" (R. 17, 622-27). The ALJ found this assessment inconsistent with plaintiff's medical record (R. 17).

The ALJ obtained expert testimony from vocational expert Jay Steinbrenner because plaintiff's limitations reduced the light unskilled jobs that plaintiff could perform. Given a hypothetical individual with plaintiff's age, education, experience, and RFC, Steinbrenner opined that such a person like plaintiff could perform work as (for example) a cleaner, plastic molding machine tender, or small products assembler. (R. 18.)

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated   Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that impairment prevents from returning to his previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative   substantial gainful work which exists in the national economy and which the plaintiff

could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a  precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the

7

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ improperly weighed the opinion evidence from his treating medical sources as well as from the state evaluators (Docket No. 12, Pl. Memo. at 12-18; Docket No. 14, Pl. Reply Memo. at 3-9). He contends that the ALJ's finding that plaintiff could perform light work was not supported by sufficient evidence in the record (Docket No. 12, Pl. Memo. at 19-25). Plaintiff argues that the ALJ was duty-bound to recontact the treating sources for a functional analysis of plaintiff's abilities (id. at 21). It was not clear to plaintiff what sources the ALJ relied upon to reach the mental aspects of the RFC (id. at 23-25). Plaintiff next contends that the ALJ failed to apply the proper standard for evaluating his credibility (id. at 25-27; Docket No. 14, Pl. Reply Memo. at 1-3). Plaintiff concludes that the ALJ erred in finding that he could perform other work in the national economy and erred in relying upon the opinion of the vocational expert which was based upon a faulty RFC (Docket No. 12, Pl. Memo. at 28-29). In his reply, plaintiff concludes that these errors require remand for further administrative proceedings (Docket No. 14, Pl. Reply Memo. at 9).

I. Evaluation of Opinion Evidence

First, plaintiff argues that the ALJ failed to express the weight given to the opinions of Drs. Jensen, Dave, and T. Andrews, and treating sources (Docket No. 12, Pl. Memo. at 12-18). Next, he objects to the ALJ rejecting the findings of the consultative examiner Dr. Dave (Docket

No. 12, Pl. Memo. at 13-14; cf. R. 16, 524).   Plaintiff faults the ALJ's reasoning since it appears to be similar to the single decision maker and not based upon a medical source (Docket No. 12, Pl. Memo. at 13; R. 72).   Dr. Andrews concluded that plaintiff had a greater psychological limitation than was found in the RFC, but the ALJ does not evaluate Dr. Andrews' opinion or state what weight was given to it (Docket No. 12, Pl. Memo. at 15).   The ALJ also discussed, but did not weigh or evaluate, the opinion of consultative psychologist Dr. Jensen (Docket No. 12, Pl. Memo. at 12; Docket No. 14, Pl. Reply Memo. at 3; R. 16, 516-20).   Plaintiff argues that the ALJ merely discounted the findings of the treating physician and therapist, merely comparing those findings with the RFC (Docket No. 12, Pl. Memo. at 16-18).

   The ALJ has to explain the weight he gives to state agency physicians and psychologists, SSR 96-6p.   Here, the ALJ merely cited these opinions with plaintiff's medical record to conclude that these opinions were consistent with plaintiff's residual functional capacity without weighing or evaluating these opinions (R. 17).   Defendant now argues that plaintiff's medical record supports the ALJ's conclusion rejecting plaintiff's subjective complaints (Docket No. 13, Def. Memo. at 16-17).   Defendant points to the ALJ's statement that Dr. Jensen's assessment was consistent with "psychiatric problems, that in themselves, did not significantly interfere with the claimant's ability to function on a daily basis," (R. 16; see Docket No. 13, Def. Memo. at 17), but the ALJ's statement merely paraphrased Dr. Jensen's assessment of plaintiff (cf. R. 519) without formally weighing that opinion (see also Docket No. 14, Pl. Reply Memo. at 4).   Contrast this with the ALJ's handling of Dr. Dave's opinion, in which the ALJ rejects it as being based solely upon a single examination and inconsistent with the rest of the medical record (R. 16; cf. Docket No. 12, Pl. Memo. at 13)

The ALJ implicitly adopted Dr. Jensen's opinions. Defendant argues that no additional weighing of these opinions is necessary since the ALJ in effect adopted them in finding that they were consistent with the medical record and the residual functional capacity finding (Docket No. 13, Def. Memo. at 16-18).

Dr. Dave provides the only medical opinion on plaintiff's physical condition (see Docket No. 12, Pl. Memo. at 14). This opinion and that of Dr. Jensen were not evaluated by the ALJ and no weight was given to it by the ALJ save concluding that these opinions were consistent with the RFC. These omissions impact the evidence sufficient to make the findings in the RFC, as discussed below.

Plaintiff also faults the ALJ for not evaluating the opinion of Dr. Andrews, which plaintiff argues found greater limitations than the ALJ did (Docket No. 12, Pl. Memo. at 15). Instead, plaintiff contends that the ALJ picked and chose from Dr. Andrews' findings those favorable to the finding of no disability (id.). Defendant counters that the ALJ need not mention two "Summary Conclusions" plaintiff cites (R. 560-61) or limitations in the Listings discussion (R 556) because "they were not the actual Functional Capacity Assessment" (Docket No. 13, Def. Memo. at 18).

The limitations plaintiff considers, however, only showed that Dr. Andrews found that he was moderately limited in two areas, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, and pace (R. 556, 560-61), with no marked limitations. The ALJ merely concluded from Dr. Andrews' opinion that plaintiff "retained the ability to earn substantial gainful activity performing simple jobs in a low contact setting" (R. 16), without a more detailed evaluation.

There is no statement how plaintiff's physical RFC is supported by medical evidence, hence plaintiff argues that the ALJ had a duty to seek additional evidence from treating sources (Docket No. 12, Pl. Memo. at 20, 21), especially since there was no medical opinion in this record on plaintiff's functional abilities and limitations (id. at 22). As for plaintiff's mental RFC, he argues that it was legally deficient because the ALJ did not show evidence to support it (id. at 23).

The ALJ's decision here **should be remanded** for a proper evaluation of these opinions.

II.   RFC Finding

Plaintiff next faults the ALJ's RFC finding because it lacks sufficient evidence to support it, absent medical opinions from plaintiff's treating sources of his functional abilities and limitations (Docket No. 12, Pl. Memo. at 22-23). Plaintiff concludes that the ALJ should have approached the treating sources and obtained additional evidence. Plaintiff also argues that the mental RFC is legally deficient because the ALJ failed to show support for this in the record.

Given the remand just recommended, the ALJ also should obtain the opinions of treating sources on plaintiff's physical capabilities.

III.   Plaintiff's Credibility

The ALJ rejected plaintiff's credibility as to the intensity, persistence, and limiting effects of his symptoms (R. 17). Plaintiff now contends that the ALJ fails to explain how plaintiff was not fully credible (Docket No. 14, Pl. Reply Memo. at 1-3). Plaintiff faults the ALJ in comparing plaintiff's testimony with the RFC found by the ALJ since that comparison was not appropriate (Docket No. 12, Pl. Memo. at 25, 28).

11

Defendant argues that the consultative examinations were also inconsistent with plaintiff's subjective complaints, justifying rejecting plaintiff's credibility (Docket No. 13, Def. Memo. at 16-17).

As noted above, Dr. Jensen's opinion found that plaintiff was only moderately limited in two functional areas. Hence, under the record previously reviewed by the ALJ, he could have discounted plaintiff's credibility. But with the reopening of the record as to the evaluation of the consultative opinions and seeking further material from treating sources, plaintiff's credibility also will have to be reevaluated.

IV. Plaintiff's Ability to Perform Other Work

Plaintiff concludes that the vocational expert's hypothetical was based upon incomplete facts, since it did not include the limitations found by Drs. Andrews and Dave (Docket No. 12, Pl. Memo. at 28-29). This Court recommends remand to evaluate Drs. Andrews and Dave's findings; hence a hypothetical to the vocational expert would have to include updated conditions for the employee to be closer to plaintiff's circumstances.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **reversed** and this matter be **REMANDED** for further administrative proceedings. Plaintiff's motion for judgment on the pleadings in his favor (Docket No. 12) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 18, 2014

13